**Alphonso Denny DAVIS, Petitioner,**

v.

**Harold R. SWENSON, Warden, Respondent.**

**No. 17468-1.**

United States District Court
W. D. Missouri, W. D.

Feb. 3, 1970.

636

James F. Duncan, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for plaintiff.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, Mo., for defendant.

## MEMORANDUM AND ORDER DENYING HABEAS CORPUS

JOHN W. OLIVER, District Judge.

### I.

Petitioner, an inmate of the Missouri State Penitentiary, attacks the validity of a ninety-nine year sentence imposed on June 4, 1956 by the Circuit Court of Cooper County, Missouri. The charge was forcible rape. Petitioner's conviction was based upon a plea of guilty. Petitioner has exhausted his available State postconviction remedies. See State v. Davis, (Sup.Ct.Mo., Div. 1, 1969) 438 S.W.2d 232, in which the Supreme Court of Missouri affirmed the State Trial Court's denial of postconviction relief.

Petitioner alleges in his federal habeas corpus petition that federally protected constitutional rights were violated in that (1) his plea of guilty was involuntary and accepted under circumstances which did not comply with applicable federal standards; (2) that he was denied the assistance of counsel at preliminary hearing; and (3) that his appointed counsel did not render the effective assistance required by the Constitution of the United States.[1]

---

1. The *pro se* habeas corpus petition filed in this Court also alleges that petitioner was not advised of his alleged right of appeal; that the prosecutrix did not at first identify him; and that his alleged rights under Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), were denied him. Even if it were assumed that federal questions are involved, those questions may not be presented for the first time in petitioner's application for federal ha-

We have carefully studied all the State court proceedings and conclude that the Supreme Court of Missouri properly approved the findings of fact made by Judge Frank W. Hayes, the postconviction trial judge, as being abundantly supported by the record. As authorized by Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), we determine that the State court findings were reliably found and that such findings should, in accordance with familiar principles based on State and federal court relations, be accepted by this Court. Because of our acceptance of the State court findings of fact, the opinion of the Supreme Court of Missouri, reported in 438 S.W.2d 232, should be referred to for the background factual situation of this case.

In affirming the trial court's denial of postconviction relief, the Supreme Court of Missouri stated:

> The trial court made an extensive review of the evidence and, inter alia, found as a matter of fact that the defendant voluntarily and without any coercion made and signed the written confession on February 7, 1956; that the nature of the charges against the defendant were adequately explained to him by his attorney before the hearing and by Judge Hoffman at the hearing and that the defendant understood the explanations and that he knew what he was doing and voluntarily and without fear or coercion entered his plea of guilty on June 4, 1956; and that the defendant had the effective assistance of legal counsel.

■ We determine that the conclusions of law implicit in that statement is consistent with applicable and controlling federal standards and that petitioner's application for federal habeas corpus should be denied.

## II.

■ The answer to the question of whether or not petitioner's written confession was voluntary does not determine petitioner's right to postconviction relief. The State trial judge and counsel for both parties properly recognized that the question of whether petitioner was innocent or guilty was not a relevant issue in the postconviction hearing (Tr. 82, 120, 173, 232). Testimony concerning that question was, however, properly received in evidence because the circumstances in regard to petitioner's confession were relevant in regard to petitioner's other claims, particularly those which related to the voluntariness of his plea of guilty and his claim of ineffective assistance of counsel. Indeed, the procedures following the State trial court, which included the reception of all available evidence and which permitted an express finding and conclusion on the issue of the voluntariness of the confession, effectively avoided the troublesome question presented in United States ex rel. Ross v. McMann, (2nd Cir. 1969 en banc) 409 F.2d 1016, cert. pending, 396 U.S. 813, 90 S.Ct. 65, 24 L.Ed.2d 67.[2] Our acceptance of the State court finding that the petitioner voluntarily and without any coercion made and signed the confession, when considered in light of other undisputed

beas corpus because petitioner did not exhaust his available postconviction remedies in regard thereto.

2. See also United States ex rel. Richardson v. McMann, (2nd Cir. 1969 en banc) 408 F.2d 48, which also pends on certiorari. (38 L.W. 3127). The United States Law Week citations do not accurately reflect the grant of certiorari in both cases. We are, however, advised by the Clerk of the Supreme Court that certiorari was granted in both cases and that those cases will be argued the week

of February 24, 1970. In both cases, the Second Circuit held, contrary to earlier decisions in that Circuit, that a state prisoner who alleges that his plea of guilty was the result of a coerced confession is entitled to an evidentiary hearing in regard to the voluntariness of his plea of guilty even though he was represented by counsel when such plea was tendered and accepted. As stated above, such a hearing was granted in this case and, because of ample support on the record, we are able to accept the State court finding of voluntariness.

facts established in the record, enables this Court to rule petitioner's claims on the basis of a factual situation appropriately developed on plenary evidentiary hearing. Resort to rules of presumption which raise the questions of substance presented in the Second Circuit cases which presently pend in the Supreme Court are therefore not presented in this case.

### III.

■ The Supreme Court of Missouri did not articulate the federal constitutional standards it applied in regard to the manner in which it determined the voluntariness of petitioner's plea of guilty. However, we may and do, pursuant to the teaching of Townsend v. Sain, *supra*, 372 U.S. at 315, 83 S.Ct. at 758, "properly assume that the state trier of fact applied correct standards of federal law to the facts" which we have determined were reliably found. Although no federal cases were cited by either of the parties in their briefs filed in the Supreme Court of Missouri, and although the Supreme Court of Missouri did not cite any federal cases, there is no evidence or reason to believe that an incorrect standard was in fact applied by that court in ruling the federal question presented. Under those circumstances the assumption we have made is permissible under Townsend v. Sain.

The question of whether or not it may be said that petitioner's plea of guilty was voluntary is complicated by the fact that the transcript of the proceedings at the time the plea of guilty was tendered and accepted is not, nor can it be, made available. It is established that the sentencing judge, the Honorable Dimmitt Hoffman, and the court reporter are both dead. An unsuccessful effort was made to find the court reporter's notes so that they could now be transcribed (Tr. 85).

In light of those circumstances, all available evidence in regard to petitioner's plea of guilty was developed at the postconviction hearing. On the basis of that evidence, the State trial judge found

and concluded that petitioner's plea was voluntary.

In support of its acceptance of the finding that petitioner understood the nature of the charges and voluntarily entered his plea of guilty, the Supreme Court of Missouri accurately stated that:

Judge Riley [who was Prosecuting Attorney at the time of the plea] * * * testified that he was sure that Davis understood the charges against him; that he recalled that Judge Hoffman 'went to some detail explaining the charges' to Davis; that Davis pleaded guilty separately to all four charges and was sentenced after each plea before the next plea was taken because that was necessary to prevent the sentences running consecutively under the statute. * * *

Mr. Egan [petitioner's appointed counsel] had read the charges to his client, explained them and the range of punishment and the fact that the sentences could be made to run consecutively. * * * Mr. Egan further testified that the circuit judge of Cooper County explained the charges, treated them separately and made them run concurrently as agreed and as recommended by the prosecuting attorney. [438 S.W.2d 236, 237].

Judge Riley remembered that Judge Hoffman went into greater detail than he, as prosecutor of Cole County, was accustomed and recalled a circumstance which corroborates that recollection. Judge Riley testified:

I thought it took longer than we would have taken in Cole County. I remember. I recall that I insisted that one charge be disposed of before a second one was taken up. I don't know whether you do or not, but very few people know about the statute that says if you plead guilty to two of them at one time, they are consecutive sentences. I knew that and I wasn't about to take advantage of this boy by giving his consecutive sentences, when he and his attorney knew that I was rec-

ommending concurrent sentences. [Tr. 127]

Judge Riley was, of course, referring to Section 546.480, V.A.M.S., a section of the Missouri statute with which many Missouri lawyers are not familiar as is evidenced by the numerous cases annotated under that section in Vernon's Annotated Missouri Statutes.

▌ In addition to what has been stated, the transcript of the postconviction proceeding also shows that petitioner testified that his counsel's testimony concerning his advice to petitioner "about the range of punishment" and the fact that counsel had "read the informations to you * * * and discussed them with you" was true [Tr. 178]. The Supreme Court of Missouri supported its acceptance of the trial court's finding by noting that petitioner's counsel "was able to get the State to waive the death penalty" [438 S.W.2d at 237]. We find and conclude that the State courts were clearly justified in taking that circumstance into consideration in its evaluation of petitioner's knowledge at the time of his plea of guilty. The record shows that petitioner's counsel was familiar with and had discussed with petitioner the fact the regular judge of the Circuit Court of Cole County, before whom petitioner's case pended before petitioner's counsel was successful in having a motion for change of venue granted, had, in the relatively recent past, imposed a death sentence on a plea of guilty of another escapee from the penitentiary who had been charged with rape committed immediately after his escape from custody.[3] Under the circumstances, it is most reasonable that petitioner was "well pleased" to learn that he would not be required to run any risk in regard to the death penalty and that he told his counsel that "it was the best news that he had ever had" [Tr. 110]. It is apparent that the State court finding was appropriately supported by the record.

## IV.

The Supreme Court of Missouri stated the following in regard to the legal question presented by petitioner's guilty plea:

Regardless of the record made at the time the plea was entered, the issues before the court on a motion to vacate and withdraw a plea of guilty are whether the plea was in fact voluntarily made and with an understanding of the nature of the charge; and in determining the factual issues the court is clothed with the discretion ordinarily exercised by a trial court when acting as the trier of facts. State v. Mountjoy, Mo., 420 S.W.2d 316, 323 [8]. In the absence of a transcript or the notes of the court reporter, the trial court must determine from the evidence otherwise adduced whether the defendant has sustained his burden of showing that he is entitled to the relief sought. State v. Keeble, Mo., 427 S.W.2d 404, 409 [10]. [438 S.W.2d at 235].

Chief Judge Becker had recent occasion to consider the federal questions presented in State v. Mountjoy when that case reached this Court in the predictable course of events. He stated in Mountjoy v. Swenson, (W.D.Mo.1969) 306 F. Supp. 379 that:

On the question of the guilty plea, federal standards regarding waiver of constitutional rights are applicable. A guilty plea is in many respects tantamount to the waiver of a jury trial, which is guaranteed by the federal constitution. "The classic definition of waiver enunciated in Johnson v. Zerbst 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 1466, 146 A.L.R. 357,—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard." Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. *The burden of producing evidence to prove relinquishment is on the prosecution.*

3. That individual was identified in the record as one Willie Porter who had been executed on September 6, 1952 (Tr. 92, 108). Petitioner's counsel testified that Porter's case "was still fresh in my mind" (Tr. 108).

Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 [Emphasis ours].

Chief Judge Becker concluded in Mountjoy v. Swenson that the Supreme Court of Missouri's statement in State v. Mountjoy concerning the petitioner's failure to carry the burden of proof under the circumstances of that case was consistent with applicable federal standards because the term burden of proof was used in the primary sense of burden, *i. e.*, risk of non-persuasion. Footnote 1 of Mountjoy v. Swenson directs attention to Missouri Rule 27.26(f), V.A.M.R. and states:

Rule 27.26(f), Mo.R.Crim.P., imposes the burden of proof on the movant convict to prove by a preponderance of the evidence his right to relief. This burden of proof "is the risk of non-persuasion, the primary sense of the words, 'burden of proof.'" IX Wigmore on Evidence (3rd Ed.) § 2485, pp. 270, 271. On the other hand, when it appears by proof that the movant was not accorded a fundamental federal right, the burden of proof in the secondary sense, namely the burden of producing evidence to show the waiver affirmatively, shifts to the state. * * * When such an affirmative waiver is shown, the burden of proof (in the primary sense) that the waiver was not understandingly and intelligently made remains upon the convict movant. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70; cf. United States ex rel. Chambers v. Maroney, (C.A.3) 408 F.2d 1186; Rimanich v. United States, (C.A.5) 357 F.2d 537; Lane v. United States, (C.A.5) 373 F.2d 570; Pedicord v. Swenson, (W.D.Mo.) 304 F.Supp. 393.

■ In Mountjoy v. Swenson, Chief Judge Becker was able to find from an examination of the entire State court record that the prosecution had in fact sustained "its burden of producing evidence to prove voluntariness, including knowledge of the rights waived, and the uncoerced nature of the guilty pleas." The same thing is true under the factual circumstances as reliably found in this case. The Supreme Court of Missouri's citation of State v. Keeble, (Sup.Ct. of Mo., 1968) 427 S.W.2d 404, illustrates that court's familiarity with the federal standards applicable to state postconviction proceedings. While paragraphs of Missouri Amended Rule 27.26 other than paragraph (f) were under specific discussion in that case, it is nevertheless apparent from the Supreme Court of Missouri's general discussion of its amended postconviction rule that the words "burden of proof" contained in paragraph (f) were used by that court in the primary sense of those words, namely, to mean that the "risk of non-persuasion" rests upon the petitioner. Neither the language of paragraph (f) of Amended Rule 27.26 nor any known application of that rule, either in this or any other reported cases with which we are familiar, suggests that the Supreme Court of Missouri would ever seek to deprive a state postconviction petitioner of his fundamental right of having the burden of producing evidence shift to the prosecution under appropriate circumstances in a particular case.

The procedures followed by the state courts in *Mountjoy*, in this case, and in all other Supreme Court of Missouri cases with which we are familiar establish that Amended Rule 27.26 was promulgated and has been applied in accordance with federal standards as they relate to the burden of going forward with the evidence and that neither the amended rule nor the Missouri practice suggests that the language of paragraph (f) of Rule 27.26 was to be, or has in fact been, considered by Missouri courts in any different sense.

Consistent with established federal court policy, further discussion of the burden of proof standard applicable to this case is redundant. See and compare Goodwin v. Swenson, (W.D.Mo.

1968) 287 F.Supp. 166 at 184, with Pedicord v. Swenson, (W.D.Mo. en banc 1969) 304 F.Supp. 393 at 398. Nor is it necessary that we discuss petitioner's reliance upon Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) in any detail. In Pedicord v. Swenson, (W. D.Mo.1969) 304 F.Supp. 393, at 398, we suggested that the principles stated in *Boykin* "are not new" and directed attention to State v. Blaylock, (Mo.Sup. Ct., Div. 1, 1965) 394 S.W.2d 364, one of the cases cited with approval in footnote 6 of *Boykin*.[4] The fundamental principle articulated and applied in *Boykin* and similar cases, including *Blaylock*, was discussed in Part III of Pedicord (304 F.Supp. at 396–398). In *Pedicord*, we expressly avoided "injecting any possible question of [*Boykin's*] retroactivity" in that case (see 304 F.Supp. at 398). When Chief Judge Becker decided Mountjoy v. Swenson, he proceeded on the theory that for purposes of that case, *Boykin* could be assumed (without so holding) to be applicable to the factual situation there presented. We make the same assumption for purposes of this case. The factual situation presented in this case, like that presented in Mountjoy v. Swenson, but unlike that presented in Pedicord v. Swenson, shows compli-

ance by the state courts with applicable federal standards (including *Boykin*, assuming it to be apposite). We therefore conclude under the facts and circumstances of this case that petitioner was not denied any federally protected right in connection with his plea of guilty.[5]

## V.

The question of whether petitioner was denied any federally protected right in regard to preliminary hearing is not an open question for this Court's consideration. Both sides recognize that the Court of Appeals for the Eighth Circuit has spoken in Pope v. Swenson, (8th Cir. 1968) 395 F.2d 321. The Missouri Attorney General suggests that the ultimate determination of the preliminary hearing issue may be governed by the Supreme Court's decision in Coleman v. Alabama, No. 72 October Term 1969, 38 L.W. 3002, 3191, argued November 18, 1969, but not yet decided. That may well be true. But this Court must follow the current view of the Court of Appeals. Should that view be changed by Supreme Court decision or otherwise, principles articulated in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), would permit peti-

4. In *Blaylock*, a plea of guilty to murder in the first degree was accepted solely on the basis of a 'yes' answer to the question, "You did do this, did you?" The Supreme Court of Missouri noted that what anyone may have "told petitioner [of the possible penalties and his right to trial by jury] does not appear in the transcript" of the postconviction hearing. In reliance upon United States v. Davis, 7 Cir., 212 F.2d 264, and other federal cases construing Rule 11 of the Federal Rules of Criminal Procedure, the Supreme Court of Missouri reversed the trial court's denial of postconviction relief because "that what appears in the transcript is not sufficient to show petitioner 'understood the consequences of his plea of guilty'" (394 S.W.2d at 367).

5. There may be doubt as to whether a real question of retroactivity is presented in regard to *Boykin's* apparent applicability to factual situations similar to that presented in this case. We recognize that four of the Justices of the Supreme Court of Pennsylvania considered that such a question was presented in Commonwealth v. Godfrey, 434 Pa. 532, 254 A.2d 923 (1969). Justice Roberts of the Supreme Court of Pennsylvania, however, in his concurring opinion, viewed the *Boykin* question "as one of substantive effect, not retroactive application." But see dissenting opinion in State v. Brech, (Sup.Ct.N.D.1969) 169 N.W.2d 242 at 253–255, for still another view. As stated in the text, we need not decide what question may be presented because, for purposes of this opinion, we have assumed *Boykin* to be applicable.

tioner to present the question in new postconviction proceedings.

## VI.

Petitioner was not denied the effective assistance of counsel. The record shows that he successfully filed appropriate motions for mental examination and for change of venue. The facts concerning his representation of the petitioner are reliably found by the state courts. Petitioner's belated claim in regard to his confession is related to his present ineffective assistance claim in that the record shows that he did not raise any question about the voluntariness of that confession until he filed his current Missouri Rule 27.26 motion. Petitioner testified that he did not, before his plea was tendered and accepted, suggest to his appointed counsel or to anyone else that his confession was anything other than voluntary. The record shows that petitioner filed two earlier habeas corpus petitions in the state courts in which no question whatever was raised concerning his confession. Petitioner's other complaints about the services of his appointed counsel are equally shallow.

We find and conclude on the basis of the facts reliably found by the state courts that petitioner was not denied the effective assistance of counsel guaranteed him by the Constitution. Petitioner was represented *pro bono publico* in this Court by James F. Duncan, Esquire, of the Kansas City Bar. We are grateful to him for his assistance to petitioner and commend him and counsel for the respondent, First Assistant Attorney General Gene E. Voigts, on the quality of the briefs filed in this case.

For the reasons stated, it is

Ordered that petitioner's application for federal habeas corpus be, and is hereby, denied.