Frederick Elmo **THOMPSON, Jr.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 21516.

United States Court of Appeals
Ninth Circuit.

July 26, 1967.

Robert R. Herz, Reno, Nev., for appellant.

Joseph L. Ward, U. S. Atty., Julien G. Sourwine, Asst. U. S. Atty., Reno, Nev., for appellee.

Before CHAMBERS, HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

Frederick Elmo Thompson, Jr., appellant herein, was charged in an indictment filed in the United States District Court for the District of Nevada with three counts of violation of 18 U.S.C. § 2314. In Count I of the indictment he was charged with a violation of the first paragraph of section 2314 which provides punishment for "[w]hoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud * * *."

In Count III of said indictment the defendant was charged with a violation of the third paragraph of section 2314 which provides punishment for "whoever with unlawful or fraudulent intent transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited * * *."

After a trial before the court, a jury having been waived, Count II of the indictment was dismissed and the defendant was convicted of Counts I and III of the indictment. A timely appeal was taken to this court. A summary of the facts produced by the prosecution will be set forth. No testimony was offered by the appellant at the trial.[1]

On the afternoon of September 7, 1966 appellant, using the name of B. J. Markwell, registered at the Holiday Hotel in Reno, Nevada, and was assigned to room 720. During the late evening of September 7 and the early morning of September 8 appellant cashed $1,650 worth of travelers checks at Harold's Club in Reno and $1,020 worth at Harrah's Club in Reno. Each time he used the name B. J. Markwell. At about 4 a. m. on September 8 appellant attempted to cash $2,500 worth of travelers checks at the Holiday Hotel. Apparently the hotel had received prior information of an individual who while cashing large amounts of travelers checks in Reno had failed to use any substantial part of the money in gambling, and when appellant attempted to cash the travelers checks at the Holiday Hotel the cashier notified the security officer of the hotel. The police had also been alerted and two

---

1. The appellant did testify at the pretrial motion to suppress.

members of the Reno Police Department arrived at the hotel while appellant was at the cashier's window in an attempt to cash the travelers checks. The security officer spoke to the appellant and asked him to come to his office so that he might ask him certain questions about the checks. The two police officers went with appellant to the security officer's office. In this office appellant took out the travelers checks and showed them to Sergeant Rama, one of the officers. He told the officers that he had bought the travelers checks over six months' period of time in Chicago, and had brought them to Nevada, but could not tell exactly where he had purchased them. Neither the officers nor Caselli, the security officer at the hotel, had any knowledge at that time that any crime had been committed. After a few minutes' conversation the appellant requested the three men to come to his room, that he could talk more freely there. He indicated there was nothing wrong and that he would be happy to explain the whole thing. He was not placed under arrest, but at the request of appellant all four persons went up to appellant's room in the hotel. When they entered the room appellant and Sergeant Rama stood for a few moments talking at the entrance between the bathroom and the bedroom. During this time appellant got a number of packets of travelers checks and handed them to Sergeant Rama. At about this time Mr. Caselli noticed that a picture on the wall was not straight, and he walked over to straighten it. As he did so, a folded square piece of newspaper fell from behind the picture. Caselli handed the unsealed newspaper to Officer Barrett who unfolded it and a green leafy stem type substance was noticed. Appellant was asked if this substance belonged to him, and he said that it did, stating: "Oh, that, I believe in smoking pot." The green stem type substance was recognized as being marihuana by the officers, and appellant was then told he was under arrest for the possession of narcotics. Thereafter, appellant's room was searched and a num-

ber of packets of travelers checks were found wrapped in a Holiday Hotel laundry bag. Some of appellant's clothing was searched and a wallet was found which contained the name Frederick Thompson and appellant stated that that was his true identification. There was also taken from appellant approximately $3,000 in cash. Appellant was then taken to the Reno police station where he was first charged with possession of narcotics. Later, information was obtained showing that the travelers checks had been stolen in blank (with neither signature nor counter signature thereon) from the Devon Bank in Chicago during the week end of September 3 to September 5, 1966, and appellant was then charged with the interstate transportation of stolen travelers checks.

It later developed that in the early morning of September 7, 1966 appellant, using the name of Benjamin J. Markwell had cashed $1,000 worth of the stolen travelers checks at the Dunes Hotel Casino in Las Vegas, Nevada, and $1,500 of the stolen travelers checks at the Sands Hotel Casino, also in Las Vegas, Nevada. The appellant was identified at the trial as the person who had cashed the travelers checks both in Las Vegas and Reno. It was also shown by the testimony that appellant was in Chicago on the afternoon of September 5, a little over 24 hours before he had cashed the first travelers checks in Las Vegas.

During the search of appellant's room after his arrest, something over $11,000 in travelers checks were taken. Some of these were in blank and others bore the signature of B. J. Markwell in the upper left hand corner.

Appellant made a motion prior to trial to suppress the evidence obtained in the search of his room, contending that this was an illegal search and seizure. The government opposed the motion, contending that the search was a proper one, having been made as an incident to the arrest of appellant for the possession of narcotics. The court denied the motion and on appellant's trial found him guilty

of the charges in Count I and in Count III of the indictment.

Concerning appellant's contention that there was an unreasonable search and seizure in violation of the Constitution, the court stated:

"It is the opinion of the court that at the time the officers interrogated the defendant he was not then the suspect in the commission of a criminal offense; that the officers did not then have probable cause to believe that a criminal offense had been committed, or that the defendant had committed an offense; they were just conducting a normal police investigation and making inquiries of a citizen with respect to circumstances which had been brought to their attention, which they thought justified some inquiry.

"The defendant answered the questions voluntarily; he was not then under any form of coercion; he invited them to his hotel room on the representation that he would be able to make a satisfactory explanation of the suspicious circumstances, if he should be permitted to go to his hotel room, or if the officers would accompany him there. * * *

* * * * * *

"After they arrived in the room, it was not as the result of a search, but an accidental happenstance that the marihuana was disclosed; * * *."

The court further stated that the defendant's reply at that time to whether the marihuana was his was not part of any formal interrogation of a person suspected of crime and "does not come within the purview of the *Escobedo* and *Miranda* decisions." The court further stated, "In any event the Court may ignore Exhibit 2,[2] and still the Government has proved the value of the securities, by other evidence, as being in excess of the statutory requirement of $5,000.00."

We agree, and hold that there is ample evidence to support the above findings of the district court. All the witnesses indicated that they had no knowledge of the commission of any crime by appellant and had no knowledge that appellant had hidden any evidence of crime. In going to his room they went there at his express invitation, had no intent to search the room and were not actually searching it when the marihuana was discovered. The mere fact that when a folded newspaper fell from behind a picture, it was opened and shown to contain marihuana, does not give rise to a successful contention of an unlawful search. As the district judge stated, "Discovery of the marihuana was not the result of any search or seizure of any kind, but was accidental, in that Mr. Caselli, as he testified, reached up to straighten the picture which was out of line * * * the package of narcotics fell out."

Once the marihuana was accidentally exposed, there was a spontaneous natural inquiry of the appellant as to whether it belonged to him. When he promptly acknowledged ownership of it, the officers had grounds to make an arrest. In Davis v. United States, 327 F.2d 301 at 305 (9th Cir. 1964), this court stated:

"As was said by Judge Holtzoff in United States v. McDaniel, 154 F. Supp. 1, 2 (D.C. 1957), affirmed 255 F.2d 896 (D.C.Cir., 1958) and cert. denied, 358 U.S. 853, 79 S.Ct. 82, 3 L.Ed.2d 87 (1958), Williams v. United States, 363 U.S. 849, 80 S.Ct. 1626, 4 L.Ed.2d 1732 (1960), 'if, without a search and without an unlawful entry into the premises, a contraband article * * * is seen in the premises, the police are not required to close their eyes and need not walk out and leave the article where they saw it.'"

We hold that under the circumstances of this case there was no unlawful search and that the arrest of the appellant and the subsequent search and seizure of his room was proper.[3]

2. The travelers checks found in a search of appellant's room.

3. It is well settled that in a search incident to a lawful arrest, the police may

■ However, even if the discovery of the marihuana was the result of an unlawful search, and it was therefore error for the trial judge to deny the motion to suppress the subsequently seized travelers checks, we hold that such error —if error there was—was harmless to the appellant beyond a reasonable doubt. See Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). Independent of the seized checks, there was evidence that defendant had cashed stolen travelers checks amounting to $2,670 at Harold's Club and Harrah's Club. There was evidence that the defendant had attempted to cash an additional $2,500 worth of travelers checks at the Holiday Hotel, and had displayed these checks. Appellant made no denial of these facts and admitted that he bought the travelers checks in Chicago and had brought them to Nevada. By independent evidence it was also shown that the travelers checks had been stolen in Chicago. There was thus independently established sufficient evidence to establish appellant's guilt on Count I without the necessity of introducing any of the evidence found in the search of appellant's room.

■ Appellant also contends that there was not sufficient evidence to establish that the securities mentioned in Count III came within the definition of "falsely made, forged, altered or counterfeited securities." The charges contained in Count III had to do with the circumstances involving the travelers checks after they had been cashed being forwarded to the office of the American Express Company in New York and that thus appellant "caused them to be transported in interstate commerce knowing them to have been falsely made, forged, altered or counterfeited." There being ample evidence to support appellant's

conviction of the charge in Count I, and appellant having received concurrent sentences on Counts I and III, it is not necessary for us to reach and discuss the merits of appellant's contention as to Count III. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Page v. United States, 356 F.2d 337 (9th Cir. 1966).

Judgment affirmed.

HAMLEY, Circuit Judge (concurring):

It may have been "an accidental happenstance" when the folded square piece of newspaper which had been concealed behind a picture in appellant's hotel room, dropped to the floor. The action of Officer Barrett in unfolding the paper to expose the marihuana clearly was not. This was a conscious, deliberate act, having for its obvious purpose the discovery of any article which may have been secreted within the folded newspaper. It was just as much a search as if the officer had opened a closed book or briefcase, lying on a table in the room, to determine if anything was concealed therein.

An officer who has been invited to the home or hotel room of another person has no authority, by reason of such invitation, to go prying into closed receptacles, files, boxes or packages in the manner weekly depicted in the television show "San Francisco Beat." Despite rightful presence on the premises, any such invasion of privacy is unlawful under the Fourth Amendment, absent specific consent, a search warrant, an immediately preceding valid arrest of the occupant on the premises, or some emergent circumstance such as the need of saving evidence about to be destroyed.

However, I agree with the majority that, on their assumption and my conclu-

---

seize evidence of an unrelated crime. Cook v. United States, 346 F.2d 563, 565 (10th Cir. 1965); Taglavore v. United States, 291 F.2d 262, 265 (9th Cir. 1961) (dictum); Charles v. United States, 278 F.2d 386 (9th Cir. 1960); see also Abel v. United States, 362 U.S. 217, 238, 80

S.Ct. 683, 4 L.Ed.2d 668 (1959); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1946); see generally Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (U.S., May 30, 1967).

sion that the hotel room search and seizure was illegal, it was harmless to defendant beyond a reasonable doubt, within the rule of Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.