**Floyd Delorace POPE, Appellant,**

v.

**Harold R. SWENSON, Warden, Appellee.**

**No. 19005.**

United States Court of Appeals
Eighth Circuit.

June 10, 1968.

Fred E. Arnold of Thompson, Mitchell, Douglas & Neill, St. Louis, Mo., for appellant.

Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, Mo., for appellee; Norman H. Anderson, Atty. Gen., Jefferson City, Mo., on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

Pope, a state prisoner, appeals from the denial of his petition for a writ of habeas corpus by the federal district court. Pope was originally convicted of first degree robbery, a violation of V.A. M.S. § 560.120, in the Circuit Court, City of St. Louis, Missouri. This conviction was affirmed in State v. Pope, 364 S.W.2d 564 (Mo. 1963). In 1964, under Missouri Supreme Court Rule 27.26, the petitioner sought to vacate the judgment and sentence on the grounds of (1) the prosecution's alleged use of perjured testimony and (2) an unlawful arrest and illegal search and seizure relating to an earring taken from his person and admitted into evidence against him. His claim was denied without an evidentiary hearing. This denial was affirmed upon appeal on several grounds, one being that the petitioner was estopped to raise the search and seizure issue on collateral attack since he had not done so upon trial and direct review. See State v. Pope, 411 S.W.2d 212 (Mo. 1967).

Counsel was appointed in the federal district court, and an evidentiary hearing was sought on the following issues: (1) to determine whether the arrest of Pope and the search and seizure of evidence pursuant to the arrest were illegal; (2) to determine whether Pope waived or forfeited his constitutional objections to the arrest and subsequent search by failing to file a pretrial motion to suppress the evidence seized and/or by failing to object to the admission of evidence at trial; and (3) to determine whether denial of counsel at the preliminary hearing, held shortly after the arrest, effectively denied to Pope the opportunity to confront and cross-examine the state's witness in violation of the Sixth and Fourteenth Amendments.

The district court denied the habeas corpus petition, finding that Pope had failed to preserve the issues of unlawful arrest and illegal search for federal review by reason of his failure to make timely objections before and during trial of the case in the state court. The district court also found that the Missouri preliminary hearing was not a "critical stage" of the proceedings, and therefore denial of counsel was not a deprivation of any constitutional right.

■ We agree that denial of counsel at the preliminary hearing under Missouri law was not a constitutional infirmity in Pope's conviction, where the defendant pleaded not guilty and was otherwise not shown to have been prejudiced. Nolan v. Nash, 316 F.2d 776 (8 Cir. 1963); State v. Owens, 391 S.W.2d 248 (Mo.Sup.Ct.1965); cf. Burnside v. State of Nebraska, 346 F.2d 88 (8 Cir. 1965).

■ We disagree with the lower court's conclusion that Pope forfeited his right to an evidentiary hearing on issues of illegal arrest, search and seizure, merely by failing to raise them in the state courts. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Worley v. Swenson, 386 F.2d 186 (8 Cir. 1967); United States ex rel. McLemore v. Russell, 371 F.2d 554 (3 Cir. 1967); Noble v. Sigler, 351 F.2d 673 (8 Cir. 1965). It is clear that a state court determination of procedural forfeiture in itself does not bar an independent determination of the merits by a federal court, since the question of *waiver* of a constitutional right remains a federal question. Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. 822; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). However, we affirm the denial of the writ for different reasons. We hold that the trial record below unequivocally demonstrates that petitioner's counsel,

acting for and binding petitioner, deliberately by-passed and waived for strategic trial reasons any available objections to the claimed illegality of the search and seizure involved.[1]

We, of course, are confronted with an insufficient record to determine the facts relating to probable cause for the arrest, primarily because the defendant and his attorney did not seek to challenge the arrest before or during trial. Ordinarily so silent a record would necessitate an evidentiary hearing on this issue, preferably to be held by the state court. See Worley v. Swenson, supra. The issue of probable cause for the arrest directly relates to the petitioner's present claim of an illegal search and seizure of his earring, which was placed in evidence by the state during the trial. However, preliminary to this issue is the question whether there was a deliberate by-pass by petitioner of his right to have illegally seized evidence excluded from consideration at his trial. Unless the record is clear as to such waiver, there must also be an evidentiary hearing on this issue. See Maldonado v. Eyman, 377 F.2d 526 (9 Cir. 1967).

In the instant case, Pope's trial counsel was the late distinguished attorney, Eugene M. Munger, now deceased. The trial record demonstrates that he was an astute and able counsel. His cross-examination of the robbery victim at trial showed thorough preparation. Pope does not, nor could he in light of the record, claim that he had incompetent counsel. However, it is Pope's present claim that he himself did not knowingly

waive his right to object as to the illegal arrest or to suppress the evidence involved. We assume this fact to be true. An evidentiary hearing on the issue of "waiver" could not, in view of Mr. Munger's death, produce more facts than what we have before us on the present record, including the original trial transcript.

Pope was charged with a robbery on December 14, 1961, of one Edward Dugan at 12:30 a. m. in the 4400 block of Washington Avenue, St. Louis, Missouri. When arrested, the petitioner was wearing an earring with a white stone in his left ear. Four days later, while still wearing the earring, he was identified by the robbery victim in a police lineup. Shortly thereafter, police officials asked that the earring be turned in to be kept with the rest of Pope's personal possessions while he remained in custody. At the trial, the robbery victim identified Pope as having worn the earring at the time of the holdup and also at the time he saw him in the police lineup. However, he stated that his identification was " * * * by his face * * * mainly, his voice when he spoke, and * * * when he answered their [the officers] question. * * * I did not recognize him entirely by his earring. It was more or less by his face, his mustache, and his voice."

At trial the following colloquy took place:

"MR. CRAWFORD: (Prosecuting Attorney) It appears to me that the defense is objecting to the question here as to the legality of the arrest,

---

[1]. Another valid ground for denial of petitioner's claim in federal court is that he has failed to exhaust his state remedies. See Baines v. Swenson, 384 F.2d 621 (8 Cir. 1967). Since the original denial of petitioner's post-conviction motion by the Missouri state court, the Missouri Supreme Court amended its Rule 27.26 whereby new post-conviction procedures are to be followed, effective September 1, 1967. Thus, his claimed rights have not been passed upon by existing state procedures. See Harris v. Swenson, 274 F. Supp. 384 (W.D.Mo.1967). However, in the instant case, in view of the extended litigation already passed in the state courts, we choose to pass on the waiver question ourselves. To do so is in the interest of orderly procedural administration and will serve to avoid repetitious litigation on undisputed facts. It would be senseless to have petitioner litigate back through the Missouri courts and the federal courts on a question to which there can be only one answer under predetermined federal principles. Cf. Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L. Ed.2d 41 (1967).

and that to me is possibly a question for the Court here, and to overrule the motion, or something like that—of that .nature. There is no question here concerning the legality of this arrest, and if that question is to be propounded—

"THE COURT: The police have a right to arrest whenever they have reason concerning a crime committed or to be committed. That's the law.

"MR. CRAWFORD: That's what I mean. He is going into the legality of the arrest.

"MR. MUNGER: No, certainly not.

"THE COURT: No, no."

Prior to the actual introduction of the earring into evidence, and at the time the state was laying a foundation to its offer, Mr. Munger objected to the questioning on the ground "it is too remote from the time of the alleged offense" and that further identification was unnecessary since the earring was already marked as an exhibit. Then at the time of the offer the following occurred:

"MR. CRAWFORD: At this time, your Honor, the State would like to formally offer into evidence State's Exhibit No. 1

"THE COURT: Are you still objecting to it?

"MR. MUNGER: *None whatever, your Honor.*

"THE COURT: All right. It may be introduced.

"Mr. CRAWFORD: I have no further questions, your Honor.

"MR. MUNGER: That is all." (Emphasis ours.)

The trial record clearly reflects the trial strategy of counsel relating to the earring. With the detailed descripton of the earring worn by the assailant at the time of the holdup and the further description of the same earring worn by the defendant at the time of the line-up, the earring itself was merely cumulative identification evidence at best.[2] Notwithstanding defendant's claim of lack of probable cause as to arrest, exclusion of the earring would not have prevented the victim's detailed description of it relating to its presence on the defendant both at the time of the holdup and the subsequent lineup as well. Defense counsel freely cross-examined the witnesses concerning the earring and did so with the obvious strategy of attacking Dugan's credibility on this point as well as many others.[3] Illustrative is Attorney Munger's argument:

"That's his [Mr. Dugan's] testimony that he first gave, but after two months, and after preparing for this occurrence in this trial he brings in an entirely different set of facts, a different story, and different details, and he wants you gentlemen to believe him now, and disbelieve or not ever know what he had previously told. Now, the Court says that you must find be-

2. Some courts have held under similar facts that the admission of seized evidence, although allegedly obtained in violation of the Fourth Amendment, can be considered "harmless error" under Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), when the conviction is attacked on appeal or post-conviction motion. See, e. g., Thompson v. United States, 382 F.2d 390 (9 Cir. 1967); Ethington v. United States, 379 F.2d 965 (6 Cir. 1967); Young v. Boles, 270 F.Supp. 847 (N.D. W.Va.1967). These courts have so ruled without discussion of the concept that the constitutional rule excluding evidence illegally seized, is not only related to the regulation of a fair trial, but is also

meant as a deterrent to illegal law enforcement. See Mapp v. Ohio, 367 U.S. 643, 654–655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Supreme Court has yet to specifically pass on this question. Cooper v. State of California, 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). We need not decide this troublesome issue here.

3. It is significant to note that the jury was apparently likewise concerned over Dugan's credibility, since the record shows *after deliberation they sent a* question to the trial judge requesting "testimony of officer who Dugan talked to after holdup."

yond any doubt that he was put in fear of his life and his person—not his life but of immediate harm to his person. Now then, let's discuss the identity phase of it. You know as well as I know, gentlemen of the jury, at the time he used many opinions. *No witness whatsoever; no police officer whatsoever, nothing at all about an ear-screw in connection with their going back up to the scene—or the alleged scene of this offense. None of the officers knew anything about the ear-screw as far as the testimony in this case is concerned until the Monday night when it was removed and seen then as far as this record is concerned.* * * * And on Monday night Mr. Dugan is called down there, and he comes down, and there's the defendant, colored, with a mustache, with an ear-screw in his ear, but there's nothing in this record to show that those were the facts in the case on that night. When I asked him he said yes, that the man had a mustache; yes, he had an ear-screw; yes, he was colored; yes, he weighed 140 pounds. Of course, he did. That's the man that he saw in the police station and that's the man that's here now, but that doesn't prove that he is the man who was up there on the lot, and nobody says it is except Dugan, and Dugan's testimony, gentlemen of the jury—He has contradicted himself in his own testimony, and there are two different occasions, and they don't fit the facts, and the two cases are not converged—the two instances of his testifying. And that's our case." (Emphasis ours).

In determining whether there has been a deliberate by-pass of a constitutional right under federal standards, we are instructed under Fay v. Noia, 372 U.S. 391, at 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963), as follows:

"The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 1466, 146 A.L.R. 357—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. * * * At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. * * * A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question."

Subsequently, in Henry v. State of Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965), a direct review of a state conviction involving a defense counsel's failure to object to evidence allegedly obtained by an illegal search, the Supreme Court stated:

"If [a strategic reason] motivated the action of petitioner's counsel, and their plans backfired, counsel's deliberate choice of the strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here. Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims, see Whitus v. Balkcom, 333 F.2d 496 (C.A. 5th Cir. 1964), we think that the deliberate by-passing by counsel of the contemporaneous-objection rule as a

part of trial strategy would have that effect in this case."

 Where the record is clear, as in the present case, that counsel knowingly, strategically and certainly not inadvertently waived objection to the admissibility of certain evidence and this occurred in the presence of the defendant, we feel such choice is binding upon the petitioner "so as to preclude him from a decision on the merits of his federal claim. * * *" Here, as we have stated, the earring itself, as well as the other testimony describing it served to supplement the basis of defense counsel's effective impeachment and argument. Under these circumstances, the original trial record properly sustains the state's burden to show that petitioner is bound by counsel's waiver and that no further evidentiary hearing is necessary. See United States ex rel. Powell v. Rundle, 370 F.2d 331 (3 Cir. 1967); Henderson v. Heinze, 349 F.2d 67 (9 Cir. 1965); Wilson v. Bailey, 375 F.2d 663 (4 Cir. 1967).

Judgment affirmed.