OPINION AND ORDER
 

 COFFRIN, Chief Judge.
 

 Defendant Donald Rakowski is charged under a two count indictment with offenses concerning the unlawful, knowing receipt through the mail of sexually explicit depictions of minors. Defendant filed three motions to suppress evidence and statements obtained as a result of a roadside questioning and the subsequent search of his residence on May 13,1987 pursuant to a search warrant. In addition, defendant
 
 *1327
 
 moved to suppress the search warrant upon which the search of defendant’s residence was based and the fruits of that search. A hearing was held on the motions on October 26, 1987. Decision was reserved. The court now denies these motions for the reasons below.
 

 FINDINGS OF FACT
 

 On May 12, 1987, special agent for the United States Customs Service at Rouse’s Point, New York, Dennis Harrison, submitted a written affidavit and application for a search warrant to Magistrate Nieder-meier. Harrison had prepared the affidavit with the assistance of two Assistant United States Attorneys and a United States Postal Inspector. The parties are familiar with the affidavit and its contents are not set forth here.
 

 On May 12, 1987, Magistrate Niedermeier issued a warrant to Harrison to search defendant’s residence on Decker Road on the basis of the written affidavit prepared by Harrison, including aerial photographs and a description of the Rakowski residence on Decker Road. Harrison proposed to supplement the affidavit with oral testimony after a controlled delivery, that is, delivery under surveillance, of the Japanese magazine was completed. The Magistrate advised that the affidavit alone was sufficient to establish probable cause and further testimony was unnecessary. Harrison planned to conduct the search on the same day that defendant picked up the magazine, and he arranged with the Vermont State Police to assist in a stop on Route 7 of defendant’s vehicle and established surveillance outside the post office. On the same day, Harrison placed the magazine in the box, removing the magazine at the end of the business day when it was not picked up.
 

 On the following day, May 13, Harrison again established surveillance and put a notice in the box that there was a package to be picked up. Defendant picked up the magazine and two additional magazines at about 4 p.m. and drove away in a cream colored Toyota, under surveillance. After two stops, defendant continued along Route 7 and drove to a gas station on the left side of the road. The State police were notified, and they drove into the gas station lot without lights or sirens, in one or two unmarked cars, with their police lights concealed.
 

 State Police Sergeant William Northrup approached the car, told defendant that a United States Customs Agent wanted to speak to him, and asked defendant to drive his car to the edge of the gas station lot. It is unclear how many officers approached defendant’s car or where the officers parked relative to defendant’s vehicle, but it is irrelevant to this decision. The officers did not draw their guns. Northrup asked defendant to drive to the edge of the lot, and defendant did so and got out of his car. Harrison approached defendant, and identified himself. He told defendant that he believed defendant had in his possession magazines prohibited from entering the United States, whereupon defendant said “you must mean this,” reached into his car, and removed the unwrapped Japanese magazine from the front seat. Harrison then advised defendant that he believed defendant had other materials. Defendant at that point removed other magazines from the seat, stating “you mean these.” This additional material included nudist colony photographs, including nude children photographs. Harrison next asked defendant for identification, and defendant produced identification for Donald Walter Rakowski. Harrison then informed defendant that he had a search warrant for material in defendant’s residence. Defendant requested and read it. Harrison advised defendant that he would be going to the residence and defendant could accompany him if he liked and that it would be more convenient for all if defendant assisted. Defendant said that he did want to accompany the search and asked if he could first put gas in his car. Defendant got into his car alone, drove to the pumps, put gas in the car, and drove to the edge of the lot. He then got into Harrison’s customs vehicle.
 

 It is unclear whether Harrison requested defendant to ride with him, but defendant’s understanding was that he had to ride over
 
 *1328
 
 with Harrison. Tr. at 92. Under either version there was nothing coercive about the arrangements in view of the fact that defendant wished to participate in the search of the house. Defendant heard Harrison state on a police radio that Harrison had the “subject in custody” and would arrive at the house soon. The two drove to defendant’s residence. While in the car, Harrison did not read defendant
 
 Miranda
 
 warnings. On the way to defendant’s residence, defendant asked if he was under arrest. Harrison told defendant that he was not then under arrest, and arrest would depend on what the residence search revealed.
 

 Upon Harrison’s and defendant’s arrival, defendant unlocked the house and two customs agents, one state police officer (who had arrived earlier), Harrison and defendant went inside the house. One agent remained downstairs, while Harrison, the other agent, and defendant proceeded upstairs. At that point, defendant made a call to his children’s baby-sitter in the presence of the agents and a call to his wife. Defendant phoned his wife out of the agents’ earshot by calling from an outside deck with the glass doors closed.
 

 Defendant then returned to the inside of the house. Defendant began to look for a phone book to call his attorney, but Harrison advised him he wanted to start the search. There is no indication that Harrison intended to interfere with defendant calling his attorney or that he knew that he wished to do so. Likewise, there is no indication that Harrison would have prevented defendant from calling his attorney had defendant made it known that he wished to do so.
 

 Before starting the search, Harrison advised defendant of his
 
 Miranda
 
 rights, reading from a card. Harrison then asked defendant if he understood his rights and defendant said “yes.” It is not clear whether Harrison again told defendant that he was not under arrest, but it is clear that he never told defendant that he was under arrest. It is also not clear whether defendant told Harrison that he would not waive his rights, as defendant testified, or defendant did not expressly decline to waive his rights, as Harrison testified. Either version does not affect the outcome of defendant’s motions.
 

 Harrison did tell defendant that the warrant authorized them to take the house apart panel by panel if necessary and that he would search with or without defendant’s help. Defendant understood that he had the option to help or not with the search.
 

 In response to a question by Harrison as to where he was hiding the material described in the search warrant, defendant said nothing and took the agents to a file cabinet in another room, where he pulled out materials involving adult spanking. Harrison then told defendant that the agents were looking for pornography involving children, and defendant showed the agents a bookcase with several child behavior books. Harrison then told defendant that he wanted any child pornography that defendant had received through the mail, that they would search the house with or without defendant’s assistance, and that they would take the house apart panel by panel if necessary. Defendant asked “just the stuff in the mail?”, and Harrison said “yes.”
 

 Defendant then led the agents to the basement. At that point Harrison stopped defendant, told him his assistance was not required and would make no difference to the search and advised defendant that he was helping them voluntarily. Defendant obtained a ladder, removed a ceiling panel, and removed 35 magazines, two 8-millime-ter movies, and five video tapes. He informed the agents that the video tapes were not child pornography and were tapes about which his wife knew nothing. The agents then asked defendant if he had revealed all. Defendant answered “yes.” The agents then asked if defendant wanted to answer any questions. The defendant said no, that he wanted to call his attorney. The agents then followed defendant upstairs, he called an attorney, and the attorney arrived as the agents continued to search.
 

 
 *1329
 
 Throughout the search an officer remained beside defendant at all times to assure that he did not destroy evidence. At no time was defendant frisked or patted down, although he was asked for the key to the post office box after the search of the residence. Defendant knew what the searchers were looking for, that receiving child pornography was illegal, and that he possessed those types of photographs in the house.
 

 Defendant has been an engineer for IBM for 17 years. He received a bachelors degree in engineering. His job involves the manufacture of memory and logic chips. Defendant had had no prior experience with law enforcement. Defendant signs his name Donald W.D. Rakowski.
 

 DISCUSSION
 

 1. Motion to Suppress Search Warrant
 

 Defendant argues that the affidavit in support of the search warrant did not contain sufficient facts to establish probable cause the evidence sought was in defendant’s residence. In addition, he asserts that the information concerning the November 6, 1986 magazine was stale by the time the warrant was issued. Defendant further argues that if the warrant fails for lack of probable cause, it was based on an affidavit “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable” and, because the agent was the affiant, he could not rely in good faith on the warrant.
 
 United States v. Leon,
 
 468 U.S. 897, 923, 104 S.Ct. 3406, 3422, 82 L.Ed.2d 677 (1984).
 

 A valid search warrant may only be issued upon an affidavit or complaint which sets forth facts establishing probable cause. U.S. Const, amend. IV; Fed.R. Crim.P. 41(c). Probable cause exists where the facts and circumstances within an officer’s knowledge and of which he or she has reasonably trustworthy information are “ ‘sufficient in themselves to warrant a [person] of reasonable caution in the belief that’ an offense has been or is being committed.”
 
 Brinegar v. United States,
 
 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949) (quoting
 
 Carroll v. United States,
 
 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). A law enforcement officer is entitled to assess the facts in light of his or her experience detecting the unlawful conduct.
 
 See United States v. Brignoni-Ponce,
 
 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (citing
 
 Terry v. Ohio,
 
 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). The Supreme Court has stated that “only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause,”
 
 Spinelli v. United States,
 
 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969) (citing
 
 Beck v. Ohio,
 
 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964)), and has applied a totality of the circumstances analysis to determine probable cause.
 
 Illinois v. Gates,
 
 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Finally, the fourth amendment does not proscribe the introduction of evidence obtained by officers reasonably relying on a warrant issued by a detached and neutral magistrate even if the warrant is later found to be unsupported by probable cause.
 
 United States v. Leon,
 
 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984).
 

 Probable cause must exist at the time the government seeks to make the search; if the information is too old, it is considered stale and probable cause no longer exists.
 
 Sgro v. United States,
 
 287 U.S. 206, 210-12, 53 S.Ct. 138, 140-41, 77 L.Ed. 260 (1932). To determine whether the affidavit establishes that objects probably connected with criminal activity can currently be found at a particularly described place, a court should look not only at the number of days between the facts relied upon in the affidavit and the time the warrant is issued, but also at the character of the crime and the thing to be seized.
 
 See, e.g., United States v. Forsythe,
 
 560 F.2d 1127, 1132 (3d Cir.1977) (evidence that documents would be preserved and operation of business was continuous);
 
 United States v. Dauphinee,
 
 538 F.2d 1, 5 (1st Cir.1976) (“hand grenades ... do not lend themselves to rapid disposition in the market place.”).
 

 
 *1330
 
 To establish probable cause to search a residence, two factual showings are necessary. The facts must show that “a crime was committed, and ... that there is probable cause to believe that evidence of such crime is located at the residence.”
 
 United States v. Travisano,
 
 724 F.2d 341, 345 (2d Cir.1983). In sum, there must be “a fair probability that the premises will yield the objects specified in the search warrant.”
 
 Id.
 
 at 346 (citations omitted).
 
 See also United States v. Peacock,
 
 761 F.2d 1313, 1315 (9th Cir.) (“The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.”) (citations omitted),
 
 cert. denied,
 
 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985).
 

 Once a magistrate has made a determination on the issue of probable cause, a reviewing court should pay “great deference” to that determination.
 
 Spinelli,
 
 393 U.S. at 419, 89 S.Ct. 584 (citing
 
 Jones v. United States,
 
 362 U.S. 257, 270-71, 80 S.Ct. 725, 735-36, 4 L.Ed.2d 697 (1960)). The Supreme Court has stated that “the traditional standard for review of an issuing magistrate’s probable-cause determination has been that so long as the magistrate had a ‘substantial basis for ... concluding]’ that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.”
 
 Gates,
 
 462 U.S. at 236, 103 S.Ct. at 2331 (quoting
 
 Jones,
 
 362 U.S. at 271, 80 S.Ct. at 736). The magistrate’s probable cause finding is itself a substantial factor tending to uphold the warrant’s validity.
 
 Travisano,
 
 724 F.2d at 345.
 

 We conclude that the magistrate had sufficient underlying facts before him to make it a fair probability that a crime had been committed and that the items sought would be found in defendant’s residence. Harrison knew that the package intercepted in November, 1986, at the “Douglas” post office box in Milton was from a known foreign distributor of child pornography and upon consultation with the Federal Bureau of Investigation that the photographs were prohibited by statute. Monitoring the post office box disclosed two additional packages from known importers or distributors of child pornography. Another package of photographs received at the box in April 1987 was verified by Harrison with a pediatrician as being of children and Harrison and the postal inspector concluded that the children were photographed in poses proscribed by statute. Given these circumstances, the magistrate could reasonably have concluded that the crime of knowing receipt of sexually explicit depiction of minors had been committed.
 

 In addition, the magistrate could reasonably have concluded, although the question is closer, that there was an “articulable connection,”
 
 Travisano,
 
 724 F.2d at 346, between the crime and defendant’s residence. The affidavit recited that at least four packages including sexually explicit depictions of minors had been mailed to Box 155. The affidavit recited that defendant opened the box, listing Walter Douglas as co-owner, a white male appeared to be the only one to pick up mail from the box, and an individual who removed mail addressed to Walter Douglas from the box was observed to drive a car registered to defendant directly to the defendant’s residence in May 1987. No drivers licenses had been issued to individuals named Walter Douglas that lived in or near Milton, Walter Douglas appeared to receive no household mail, that is, bills, and defendant’s middle name was Walter. The affidavit recited that defendant appeared to receive all mail addressed to him at his residence on Decker Road. The affiant, an experienced customs agent, stated that those who collect child pornography often open up post office boxes, listing fictitious owners. The affidavit also revealed another experienced agent’s conclusions that those who collect child pornography keep the pornography, do not destroy their collections, and keep the pornography accessible. The magistrate could reasonably have concluded on these facts that defendant set up the box for the purpose of receiving child pornography and other sexually explicit materials and that defendant stored these materials at his residence.
 

 
 *1331
 
 We also find that the magistrate could reasonably have concluded that probable cause was not stale in May because of the character of the crime and the evidence to be seized. The affidavit described a continuing offense of receiving child pornography and the enduring utility of the materials to their holder. The affidavit recited that at least four packages had been mailed to Box 155, in November and December 1986 and January and April 1987, and provided a substantial basis for concluding that the defendant set up the box to receive one genre of mail under a fictitious name. The affidavit also stated an experienced agent’s conclusion that a collector of such materials would not destroy the collection.
 

 Furthermore, even if the magistrate did not have a substantial basis for finding probable cause, the agents and searching officers’ actions were in good faith on a warrant which they reasonably believed to be valid. There is no evidence that the agent made false statements in the application or that the magistrate abandoned his role as a neutral and detached decisionmaker. The warrant is not facially deficient or so lacking in indicia of probable cause to make agent Harrison’s reliance on the magistrate’s determination unreasonable. On the contrary, facts and circumstances within Harrison’s knowledge and of which he gained trustworthy information could have warranted a person of reasonable caution to conclude that probable cause existed to search defendant’s home. In addition, Harrison relied on the advice of two Assistant United States Attorneys in preparing the affidavit.
 

 2. Motion to suppress automobile evidence
 

 Defendant has moved to suppress all evidence found in defendant’s automobile as the product of an unlawful arrest. Defendant argues that agent Harrison took defendant into custody, without a warrant or probable cause, in the parking lot of the gas station. Defendant asserts that because there was no probable cause or valid arrest, evidence seized from his car should be suppressed.
 

 When officers detain an individual for the purpose of requiring him or her to identify himself or herself or answer questions, they perform a seizure of the person subject to the fourth amendment’s requirement that the seizure be reasonable.
 
 Brown v. Texas,
 
 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). The Supreme Court has recognized that in some circumstances officers may detain a suspect briefly for questioning although they lack probable cause, as is required for a traditional arrest.
 
 United States v. Hensley,
 
 469 U.S. 221, 226,105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985) (citing
 
 Dunaway v. New York,
 
 442 U.S. 200, 207-11, 99 S.Ct. 2248, 2253-56, 60 L.Ed.2d 824 (1979)). The Court has required, however, that the officers have a reasonable suspicion, based on specific and articulable facts, that the individual is involved in criminal activity.
 
 Id.
 
 (citing
 
 Delaware v. Prouse,
 
 440 U.S. 648, 653-55, 99 S.Ct. 1391, 1395-97, 59 L.Ed.2d 660 (1979)). One important factor in finding reasonable suspicion existed is the personal experience and expertise the law enforcement officer brings to the investigation.
 
 United States v. Oates,
 
 560 F.2d 45, 61 (2d Cir.1977) (citations omitted).
 

 If a detention is valid, “the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer’s suspicions. But the detainee is not obliged to respond. And, unless the detainee’s answers provide the officer with probable cause to arrest him, he must then be released.”
 
 Berkemer v. McCarty,
 
 468 U.S. 420, 439-40, 104 S.Ct. 3138, 3149-50, 82 L.Ed.2d 317 (1984) (citing
 
 Adams v. Williams,
 
 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972);
 
 Terry v. Ohio,
 
 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968) (White, J. concurring)). Officers “do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.”
 
 Florida v. Royer,
 
 460
 
 *1332
 
 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983) (citing
 
 Dunaway,
 
 442 U.S. at 210, n. 12, 99 S.Ct. at 2255, n. 12;
 
 Terry,
 
 392 U.S. at 31, 32-33, 88 S.Ct. at 1885, 1885-86 (Harlan, J., concurring);
 
 id.
 
 at 34, 88 S.Ct. at 1886 (White, J., concurring)).
 

 During a legal detention, officers can request to search defendant and his or her belongings, and if, under the totality of the circumstances, the court finds that defendant’s consent was voluntary, the evidence will be admissible in a criminal prosecution against the defendant.
 
 Schneckloth v. Bustamonte,
 
 412 U.S. 218, 219, 226, 93 S.Ct. 2041, 2047, 2055, 36 L.Ed. 2d 854 (1973). Coercive law enforcement conduct, however, can invalidate a manifestation of consent, but the mere fact of custody or the presence of many officers will not alone invalidate consent.
 
 Schneckloth,
 
 412 U.S. at 233-34, 93 S.Ct. at 2050-51 (citations omitted);
 
 United States v. Vasquez,
 
 638 F.2d 507 (2nd Cir.1980),
 
 cert. denied,
 
 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981).
 

 An investigative detention may become unreasonable and ripen into an illegal arrest, however, if probable cause is absent and the stop is not temporary and limited in duration to the time period necessary to effectuate the purpose of the stop.
 
 Royer,
 
 460 U.S. at 500, 103 S.Ct. at 1325. The Supreme Court stated in
 
 United States v. Sharpe,
 
 “[i]n assessing whether a detention is too long to be justified as an investigatory stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.” 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) (citations omitted).
 

 We conclude that the initial detention of defendant was justified. We find that agent Harrison testified to specific, articulable facts which, in light of his experience, gave rise to a reasonable inference that defendant had committed a crime. In addition to the facts we noted above which justified Harrison’s reasonable inference that probable cause existed to search defendant’s residence for evidence of defendant’s criminal activity, we note that Harrison intercepted a magazine addressed to Walter Douglas, a pediatrician told Harrison that he believed the magazine’s photographs were of children, and Harrison and Postal Inspector Dunn concluded that the photographs were prohibited by statute. Harrison placed the magazine in box 155 and observed defendant take mail from the box. Harrison followed defendant and approached the defendant at a gas station where defendant had stopped to buy gas. We find that these specific facts justified the detention.
 

 In addition, we find that the detention was brief and did not ripen into an illegal arrest; the Vermont State Police officer told defendant that a United States Customs agent wished to speak with defendant, and Harrison asked defendant for identification and the materials in his car, showed defendant the search warrant for defendant’s residence, and told defendant that defendant could choose whether or not to accompany Harrison to search. Thus after a brief exchange, defendant was told that he was free to leave. We find that no delay here was unnecessary to Harrison’s legitimate investigation and that defendant has produced no evidence that Harrison was dilatory in his investigation.
 

 We also find that defendant was not in custody or subjected to custodial interrogation when agent Harrison asked him for his identification or the materials Harrison had observed defendant taking from P.O. Box 155. Defendant had stopped and stepped out of his car, unaware of a planned stop of his vehicle. The detention was in public, defendant stood outside his car with Harrison, and no officers showed guns or told defendant that he was under arrest. Although the stop cannot be characterized as an ordinary traffic stop, as the government suggests, the detention was nevertheless less “police dominated” than that surrounding the kinds of interrogation at issue in
 
 Miranda v. Arizona,
 
 384 U.S. 436, 467, 86 S.Ct. 1602, 1624,
 
 *1333
 
 16 L.Ed.2d 694 (1966), discussed below. Thus, defendant’s removal of the magazines from the car and statements “you must mean this” and “you mean these” did not result from custodial interrogation in that no significant deprivation of freedom had occurred. Indeed, we find that defendant voluntarily produced the evidence in response to two questions, which could hardly be characterized as coercive.
 

 Finally, we find that defendant’s removal of the magazines from his car after a minimum of questioning constituted a consensual search. There is no evidence that Harrison or any of the officers reached into the car, visually inspected the car interior, or asked for defendant’s car keys. There is no claim that defendant’s car was searched after defendant left the car in the gas station lot. Defendant is an educated adult with a bachelors degree, was not under arrest at the time he gave consent, was not intoxicated, was not overpowered by officers or physically restricted by handcuffs or a show of guns, or was not frisk searched, had not yet been told that the officers had a search warrant for defendant’s home, did not appear hesitant in agreeing to the search, and never asked to speak to a lawyer before reaching into the car and giving the agent the magazines. We can only conclude that defendant acted “voluntarily in a spirit of apparent cooperation with the officer’s investigation.”
 
 Sibron v. New York,
 
 392 U.S. 40, 63, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).
 

 3. Motion to suppress statements made and evidence found at defendant’s residence
 

 Defendant seeks to suppress any statements or testimonial communication made to the searching officers during the search of defendant’s residence. Defendant asserts that although he was not formally arrested, he was subject to custodial interrogation after he had expressly declined to waive his right to remain silent. Defendant contends that he reasonably felt that he was not free to leave his residence during the search because law enforcement officials blocked his vehicle at the gas station, at least three officers confronted him at the station, Harrison ordered defendant into Harrison’s car and told defendant that he would not be able to pick up his children from the baby-sitter, defendant heard Harrison state on his police radio that he had the subject in custody, an officer remained by defendant’s side from the gas station until the search of his residence was completed, defendant was the target of a criminal investigation, and the officers told defendant that without his cooperation they would take his residence apart panel by panel. He argues that all evidence obtained as a result of the alleged violation of his right to remain silent should be suppressed as the “fruit” of the illegality.
 
 Wong Sun v. United States,
 
 371 U.S. 471, 485-87, 83 S.Ct. 407, 416-17, 9 L.Ed.2d 441 (1963).
 

 In
 
 Miranda v. Arizona,
 
 the Supreme Court held that the prohibition against compelled self-incrimination, as contained in the fifth and fourteenth amendments, requires that custodial interrogation be preceded by advice to the defendant that he or she has the right to remain silent and the right to the presence of an attorney. 384 U.S. 436, 467-69, 86 S.Ct. 1602, 1624-25, 16 L.Ed.2d 694 (1966). If the accused indicates that he or she wishes to remain silent or requests counsel, interrogation must cease.
 
 Id.
 
 at 473-74, 86 S.Ct. at 1627-28. The
 
 Miranda
 
 Court recognized that confessions and admissions made during custodial interrogation are presumptively products of coercion and therefore a form of compelled self-incrimination, and therefore require special safeguards in cases of “incommunicado interrogation of individuals in a police-dominated atmosphere.”
 
 Id.
 
 at 445, 86 S.Ct. at 1612.
 

 Since
 
 Miranda,
 
 the Court has “specifically stressed that it was the
 
 custodial
 
 nature of the interrogation which triggered the necessity for adherence to the specific requirements of its
 
 Miranda
 
 holding.”
 
 Beckwith v. United States,
 
 425 U.S. 341, 346, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) (emphasis original) (citing
 
 Orozco v. Texas,
 
 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed. 2d 311 (1969);
 
 Mathis v. United States,
 
 391
 
 *1334
 
 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968)). More than “a coercive atmosphere” is required to determine whether or not an individual is in custody,
 
 Oregon v. Mathiason,
 
 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam); the defendant must be “deprived of his freedom of action in any significant way,”
 
 id.
 
 at 494, 97 S.Ct. at 713 (citing
 
 Miranda,
 
 384 U.S. at 444, 86 S.Ct. at 1612), or deprived of freedom of action to a degree associated with formal arrest.
 
 California v. Beheler,
 
 463 U.S. 1121, 1125, 103 S.Ct. 3517, 2520, 77 L.Ed.2d 1275 (1983) (per curiam) (citing
 
 Mathiason,
 
 429 U.S. at 495, 97 S.Ct. at 714). Custodial interrogation is not defined by the officer’s or the defendant’s subjective intent or by the officer’s unarticulated purposes; rather, courts should evaluate “how a reasonable man in the suspect’s position would have understood the situation.”
 
 Berkemer v. McCarty,
 
 468 U.S. at 442, 104 S.Ct. 3151. If a reasonable individual in the suspect’s position would believe he or she was not free to go, the interrogation is custodial for
 
 Miranda
 
 purposes.
 

 Lower courts rarely find custody where interrogation is conducted outside a police station or vehicle, and almost universally hold that questioning in a suspect’s home is not custodial because individuals in a familiar environment are less likely to be intimidated by law enforcement officers.
 
 See, e.g., Beckwith,
 
 425 U.S. at 342, 347, 96 S.Ct. at 1614, 1616;
 
 United States v. Hall,
 
 421 F.2d 540, 544-45 (2d Cir.1969),
 
 cert. denied,
 
 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970);
 
 Hicks v. United States,
 
 382 F.2d 158, 161 (D.C.Cir.1967);
 
 Thompson v. United States,
 
 382 F.2d 390, 393 (9th Cir.1967).
 
 But see Orozco v. Texas,
 
 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969) (incommunicado interrogation by four police officers at 4:00 a.m. in suspect’s bedroom after arrest was in-custody interrogation). In addition, courts often find that questioning following law enforcement officers’ statements that the individual is not under arrest is noncustodial, especially where there is insufficient evidence to show that the defendant did not believe the officer’s statement.
 
 See, e.g., United States v. Semkiw,
 
 712 F.2d 891, 892-93 (3d Cir.1983);
 
 United States v. Wallraff,
 
 705 F.2d 980, 992 (8th Cir.1983);
 
 United States v. Jones,
 
 630 F.2d 613, 616 (8th Cir.1980);
 
 Lucas v. United States,
 
 408 F.2d 835, 836 (9th Cir.1969). Of course, where the circumstances undermine the sincerity of the officer’s reassurances to the suspect that he or she is not under arrest, courts may find that the setting was a “custodial” one despite the officer’s assertions.
 
 See, e.g., United States v. Glen-Archila,
 
 677 F.2d 809, 812, 814 n. 12 (11th Cir.),
 
 cert. denied,
 
 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 137 (1982).
 

 The Court has refused to extend
 
 Miranda
 
 to cover interrogation in noncustodial circumstances even after a police investigation has focused on the suspect,
 
 Beck-with,
 
 425 U.S. at 345, 96 S.Ct. at 1615, because “[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it.”
 
 Mathiason,
 
 429 U.S. at 495, 97 S.Ct. at 714. The Court has recognized, however, that in some noncustodial situations, law enforcement officials may “ ‘overbear petitioner’s will to resist and bring about confessions not freely self-determined.’ ”
 
 Beckwith,
 
 425 U.S. at 348, 96 S.Ct. at 1617 (quoting
 
 Rogers v. Richmond,
 
 365 U.S. 534, 544, 81 S.Ct, 735, 741, 5 L.Ed.2d 760 (1961)). In these situations, proof that warnings were given would be relevant evidence on the issue of whether the questioning was coercive.
 
 Id.
 
 (citing
 
 Frazier v. Cupp,
 
 394 U.S. 731, 739, 89 S.Ct. 1420, 1424, 22 L.Ed.2d 684 (1969);
 
 Davis v. North Carolina,
 
 384 U.S. 737, 740-41, 86 S.Ct. 1761, 1763-64, 16 L.Ed.2d 895 (1966)).
 

 We find that defendant was not in custody and therefore that the searching officers were not required to administer
 
 Miranda
 
 warnings. Defendant contends that he was in custody from the initial stop at the gas station throughout the entire search. The circumstances suggest, however, that a reasonable person in defendant’s position had every reason to believe Harrison’s statements that defendant was not under arrest. In addition, we find no indication that the questioning took place in
 
 *1335
 
 a context where defendant’s freedom to depart was restricted.
 

 We find that defendant was not in custody at the gas station or in Harrison’s vehicle. Defendant was questioned briefly and told that he was not under arrest and that he could choose whether or not to accompany the officers to search his residence. The officers showed no guns, did not frisk or handcuff defendant, and allowed him to drive his car in the lot unaccompanied. There is some disagreement as to whether Harrison invited defendant into Harrison’s car or whether defendant assumed he should ride in the agent’s car. Yet even if Harrison suggested that defendant ride with him, it appears that defendant could have driven his own car or driven away, but that he never asked or attempted to do either. If he entered the vehicle at his own initiative, clearly the custody requirement has not been met. He voluntarily accompanied the officers to his home after having been informed that he was not under arrest and that he could choose whether or not to accompany Harrison. In addition, although defendant testified that he overheard Harrison state on his police radio that he had the “subject in custody,” Harrison’s previous statements to defendant that he was not under arrest, could choose to accompany the search, and would not be arrested unless the searchers found unlawful materials would have indicated to a reasonable individual that he was free to leave. The court considers the language “subject in custody” to be police jargon that defendant was with Harrison and not language intended to imply that defendant was not free to leave.
 

 We also find that defendant was not in custody during the search of his residence. Once at his residence, defendant was allowed to make two phone calls, including one private call, although he remained in view through a glass door. It is unclear whether he could have left the house from the deck. He was again told that he was not under arrest and was advised of his right to remain silent and to have an attorney present. The record shows that defendant received the
 
 Miranda
 
 warning, indicated he understood his rights, and immediately upon questioning began to show the searchers materials in his residence. In addition, defendant was told at least three times that he did not need to assist in the search. Furthermore, defendant is an educated, experienced engineer. Defendant was in familiar surroundings and although there were at least three law enforcement officers in the house, only Harrison appeared to question defendant and not all of the officers appeared to be present at one time. It was defendant’s personal choice to stay and assist with the search in view of Harrison’s statement that the warrant authorized the searchers to take apart the house panel by panel. His freedom to leave was not restricted, and we have no doubt he could have done so, even though in the circumstances it may have been more prudent for him to stay.
 

 Although a noncustodial situation can be coercive and bring about involuntary self-incriminations, we also find that the questioning of defendant was not coercive. The number of officers, the officer remaining with defendant, and the officer’s threat to take apart defendant’s residence are factors that would support a finding that the questioning was coercive. These circumstances alone, however, cannot be characterized as a situation in which “the behavior of ... law enforcement officials was such as to overbear [defendant’s] will to resist and bring about confessions not freely self-determined.”
 
 Rogers,
 
 365 U.S. at 544, 81 S.Ct. at 741. Defendant was advised that he had the right to remain silent and have counsel present. He was not in unfamiliar surroundings or unable to communicate with outsiders. We can only conclude, given defendant’s education, occupation, and background, that he was fully made aware of his constitutional rights which he was free to exercise at any relevant time if he chose to do so.
 

 Conclusion
 

 This court denies defendant’s three motions to suppress.
 

 Defendant’s Motion in Limine
 

 Defendant’s motion in limine is denied as premature. Upon timely objection by de
 
 *1336
 
 fendant at trial, the court will rule upon the admissibility of the evidence in question.
 

 This case is scheduled for trial as the No. 2 case for Tuesday, December 8, 1987.